**Terrell Morgan MOORE, by His Next Friend, Elizabeth Mears Moore, Plaintiff,**

**v.**

**ORDER MINOR CONVENTUALS, a Corporation (heretofore designated as Franciscan Order of Monks) and Father Jerome Dukette, Defendants.**

Civ. No. 1721.

United States District Court
W. D. North Carolina,
Asheville Division.

Sept. 4, 1958.

Uzzell & DuMont, Harkins, Van Winkle, Walton & Buck, Asheville, N. C., for plaintiff.

Adams & Adams, Anthony Redmond, Francis J. Heazel, Asheville, N. C., for defendants.

WARLICK, District Judge.

This action was tried before the court and a jury at the July-August Special Term of the Asheville Division. It was originally instituted in the Superior Court of Buncombe County in the Western District of North Carolina and on the grounds of a diversity of citizenship was removed to this court. Section 1332, Title 28, U.S.C.

The action is laid in negligence and under proper allegations plaintiff seeks a recovery in the sum of $300,000. At the conclusion of the evidence for the plaintiff a motion was made by the defendants to dismiss the action under Rule 41(b) of the Rules of Civil Procedure, 28 U.S.C. This motion was denied but taken under advisement to be passed upon at the conclusion of all the evidence in the case, and following the presentation of defendants' evidence the motion of dismissal was renewed. After a careful study of the facts, taking into consideration the arguments, and the law, I was of the opinion that the motion as made for a directed verdict should be granted and accordingly such entry was made and the action dismissed. Rule 50, Federal Rules of Civil Procedure. In furtherance of my ruling and in line with the Rules, I make the following Findings and Conclusions:

Plaintiff, Terrell Morgan Moore, and his Mother, Elizabeth Mears Moore, duly appointed as his next friend to prosecute the action under the North Carolina Statutes, G.S. § 1–64, are citizens and residents of Buncombe County in the Western District of North Carolina. The defendant, Order Minor Conventuals, is a New York corporation having its principal office in Syracuse in said state. The defendant, Father Jerome Dukette, is a citizen of and resides in the State of New York.

The amount in controversy exceeds the sum of $3,000, exclusive of interests and costs.

On October 6, 1955, the date of the alleged injury and resulting damage, coming about from the explosion hereafter set out, plaintiff Terrell Morgan Moore was a student at St. Francis High School, located in Asheville, North Carolina, which school was being conducted by the defendant, Order Minor Conventuals, as a part of the educational program of the Catholic Church, and Father Jerome Dukette held the position of principal of said school.

Plaintiff, following his enrollment, entered St. Francis High School for the first time as a Junior at the opening of the 1955 academic year in mid-September. He was born on June 1, 1940, and at the time of his alleged negligent injury was 15 years, 4 months and 5 days of age. His intelligence was considerably above average for a boy of his years; the grades he made in previous schools had been average and above, and he had consistently since early boyhood engaged in the usual activities of a normally healthy American boy,—being an active member of the Boy Scouts of America, and likewise taking an active interest in an organization wholly peculiar to Buncombe County, and known as the Junior Deputy Sheriffs, and had attended various summer camps for boys. He was fond of hunting, liked the outdoors, and was familiar with firearms, having owned a German Mauser since he was six years of age, and having on frequent occasions used pistols and rifles since he was approximately twelve years of age. Entering school at the age of six he finished the elementary departments as required and then attended David Millard Junior High in Asheville and the Admiral Farragut Academy in Florida, and after being interviewed was accepted and placed in the tenth grade at St. Francis, and assigned instructions in English, French, Latin, Algebra and Chemistry and Religion. This class in chemistry was the

first in which plaintiff had ever studied that subject.

Prior to the accident set out in the complaint he had actually attended ten classes in chemistry and had had two laboratory periods at St. Francis, school having been in session only a little over two weeks before he sustained the injuries of which he complains.

Forty-eight students were enrolled at St. Francis and there were four teachers or instructors engaged.

The injury of which plaintiff complains and through which he allegedly suffered the damage sustained came about and was proximately produced by his effort or trial to make gunpowder in the laboratory of St. Francis High School, in the early afternoon of October 6, 1955.

The chemicals owned by St. Francis and which were to be used in the various formulas that were to be undertaken during the year in the teaching of primary chemistry were ordered from a chemical dealer in Boston from a list prescribed by the North Carolina Department of Education, and each of the chemicals referred to was likewise included in a list prescribed by the Laboratory Manual. Chemistry was being taught by Father Roderick Fanuef.

Two buildings constituted the physical properties of St. Francis High School,—one being designated as the Main Building and the other as the Chemistry Laboratory,—each being located approximately 200 ft. apart. The main door to the laboratory was kept locked except when in use. There were two keys available. One was kept by Father Roderick Fanuef, instructor in chemistry, and the other was in possession of Father Jerome Dukette, the school's principal. On occasion it had been the policy of Father Roderick Fanuef to permit the use of his key by certain students studying chemistry so as to enable them to go to the laboratory somewhat ahead of the regular class period for the express purpose of setting up the apparatus that was to be used in

were kept in a cabinet in the laboratory the coming study period. The chemicals building which was not locked. None of the chemicals were explosive in and of themselves, and in order thereby to produce any formula it would be necessary to mix these chemicals with another or other substances.

Up until the time of the alleged accident no instructions had been given by Father Roderick Fanuef, the instructor, for making gunpowder, or any similar explosive substance, and the text book or laboratory manual used by the class did not contain any formula therefor.

On October 6th, shortly before the explosion from which the damage herein stems, two members of the chemistry class, Wriston A. Thompson and Lawrence E. Redmond, who had been in the study hall conducted on that occasion by Father Angelus Netzer, secured his permission to leave the study hall so that they might be permitted to see Father Roderick who at that time was teaching a class in Algebra, to learn if it would be possible for them to go to the laboratory to set up the apparatus for an experiment that was being planned for work that afternoon in the chemistry class, hoping thereby to get out the necessary apparatus so that a longer period of time could be available for the actual laboratory work and have everything in readiness for such tests. The key was secured and in due time six students, including plaintiff, studying chemistry came to the laboratory,—plaintiff having been given permission by Father Angelus Netzer, the instructor in said study period, to leave the study hall and go to the laboratory and assist in setting up the apparatus for the afternoon's experiment. He did not obtain permission from Father Roderick Fanuef and it is not made to appear that such was necessary under the school regulations. No member of the faculty was present at the time of the explosion. Plaintiff, on getting to the laboratory, told the other students that he was going to make some gunpowder; that he knew how it was made and would show those present what it

contained. Whereupon going to the cabinet he got a quantity of saltpeter and sulphur and then tried to find some charcoal, since he testified that these three ingredients were those compounds which would make gunpowder, and being unable to locate the charcoal, secured some manganese dioxide or trioxide and mixed these three chemicals together, making further tests to determine whether or not they would burn. They did not, "but only fizzled". Whereupon plaintiff added red phosphorus to the chemicals already mixed and began stirring it, and at that time it "went off" to use the language of the plaintiff, "it exploded".

From the explosion plaintiff was terribly injured. His left hand was so badly mangled that it had to be amputated. His left eye was destroyed from the violence of the explosion. Glass punctured his stomach in any number of places, all of which caused him a great deal of pain, suffering and mental anguish, and resulted in some several operations, causing him to remain in the hospital for twelve days and at home thereafter recuperating for more than a month, and obviously he will be a cripple for life.

Most, if not all of the boys present with the plaintiff in the laboratory while setting up the apparatus for the afternoon's tests, on being acquainted with what plaintiff intended doing, testified that they told him that he had best not put those materials into the beaker and mix them; that they were afraid that an explosion would come about and that one of those present, Joe DeBlaker, specifically told him to be careful and that others gave him a like warning of the inherent danger. Following the explosion in which the plaintiff was injured, he told Father Jerome that it was his fault. Later, however, he undertook to explain such admission by the fact that he didn't know what was going to happen to him and if anything serious did overtake him that he "didn't want anybody to be blamed for my death". Plaintiff, prior to the injury, admitted that he was undertaking to create an explosive and that he had learned at a place

other than St. Francis of the way and manner in which gunpowder was made and the necessary elements needed.

Having studied the record carefully and having had the privilege of hearing each witness testify, the foregoing facts are found as those which arise accurately and truthfully upon the evidence offered in the hearing. However, in all fairness, I would include all evidence offered and heard by the court and jury as constituting facts and being found as such for the purpose of the record.

Contentions:

Plaintiff contends, among other things, that he was injured by the negligence of the defendants in that they failed to exercise proper care for his safety, taking into consideration the circumstance under which they were placed; and that among other things he was not properly warned and was unacquainted with the inherent danger of the substance which made up the chemicals contained in the locker as the property of the school; that no instructor was present and in charge of the class; and that it was a negligent act, both on the part of the school and Father Dukette, to permit plaintiff, a lad of 15 years, who was lacking in experience, to have access to the laboratory and the chemicals contained therein as such was made possible by the authority given, to plaintiff and the other students to go to the laboratory; and that the defendant should have reasonably foreseen that a circumstance like unto that described in the evidence would likely occur; and finally that such negligence of the defendants proximately produced the injury and damage which the plaintiff has suffered and sustained.

The defendants on the other hand contend in the argument had before me, and in their brief filed, that plaintiff was of sufficient age to be fully aware of the danger of which he complains; that all of the students were carefully selected and each presumably could be trusted, and that it was not an uncommon thing to permit students to go to the laboratory, for the express purpose and none other, of setting up the apparatus to be

used in the experiment contemplated for that afternoon's school work. That none of the chemicals were inherently dangerous in themselves; that the defendants could not foresee that plaintiff would undertake to mix chemicals in an effort to produce gunpowder when such formula was not taught and not even contained in the manual. That defendant was of sufficient age to be acquainted with the danger involved in the thing he was undertaking to do; was fully warned, but continued in the face of such warning to mix the solutions which produced the explosion, and that he was guilty of and chargeable with contributory negligence.

Conclusions:

During the trial when the motion to dismiss was made and a directed verdict requested, one question was up for determination,—

"Did plaintiff offer evidence of such probative force, when such evidence is considered in the light most favorable to him, to entitle him to have his cause of action submitted to the jury?"

This is the decisive question presented on this record.

■ Naturally the case must be governed and determined by the North Carolina decisions in cases of this character. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, Norfolk Southern Ry. Co. v. Swindell, 4 Cir., 139 F.2d 71.

■ Direct evidence of negligence is not required. It may be inferred from facts and attendant circumstances, and if the facts proved establish the more reasonable probability that the defendant was guilty of actionable negligence, the case cannot be withdrawn from the jury. Etheridge v. Etheridge, 222 N.C. 616, 24 S.E.2d 477; Whitson v. Frances, 240 N.C. 733–737, 83 S.E.2d 879.

Stacy, C. J., said, in Tyson v. Ford, 228 N.C. 778, 47 S.E.2d 251, 253, "The test of liability for negligence, primary or contributory, is the departure from the normal conduct of the reasonably prudent man, or the care and prevision which a reasonably prudent person would employ in the circumstances. The rule is constant, while the degree of care which a reasonably prudent person is required to exercise varies with the exigencies of the occasion." " 'Practically every case must "stand on its own bottom." ' " Cole v. Koonce, 214 N.C. 188, 198 S.E. 637; Dawson v. Seashore Transportation Co., 230 N.C. 36–39, 51 S.E.2d 921.

■ When the evidence offered in this case is sifted to its essentials and weighed in the balance, provided by the North Carolina rules of law, one fails to find any evidence of whatever degree on the part of the defendants or either of them that could be the proximate cause of the injuries suffered by plaintiff. In fact only inferences can be drawn and they are hazy and clouded with conjecture. The evidence constitutes tragedy of a most pitiful character, but that in no wise adds up to a charged negligence for which the defendants would be legally liable.

Moreover, the negligence of the plaintiff as found in the evidence, taken in its light most favorable to him, so clearly establishes contributory negligence on his part that I can draw no other inference or conclusion from it.

The North Carolina rule relating to the age of responsibility of an infant is as follows:

"An infant of the age of 14 years is presumed to have sufficient capacity to be sensible of danger and to have power to avoid it, and this presumption will stand until rebutted by clear proof of the absence of such discretion as is usual with infants of that age. At what age this presumption arises is not a question of fact, but one of law. The inquiry at what age must an infant's responsibility for negligence be presumed to commence cannot be answered by referring it to a jury. That would furnish us with no rule

whatever. It would simply produce a shifting standard, according to the sympathies or prejudices of those who composed each particular jury. One jury might fix the age at 14, and another at 18, and another at 20. The responsibilities of infants are clearly defined by text-writers and courts. At common law, 14 was the age of discretion in males and 12 in females. At 14 an infant could choose a guardian and contract a valid marriage. After 7 an infant may commit a felony, although there is a presumption in his favor, which may, however, be rebutted. But after 14 an infant is held to the same responsibility for crime as an adult. Sharswood's Blackstone, Vol. 1, pp. 20, 435, 404, * * * From all these and other approved authorities the principle is deduced that an infant, so far as he is personally concerned, is held to such care and prudence as is usual among children of the same age, and if his own act directly brings the injury upon him, while the negligence of the defendant is only such as exposes the infant to the possibility of an injury, the latter cannot recover. The Supreme Court of the United States has substantially held the same to be sound law in the cases above cited." Baker v. Seaboard Air Line Railroad Co., 150 N.C. 562–564–565, 64 S.E. 506, 507, 29 L.R.A., N.S., 846.

Hence taking into consideration all the evidence in the case, the age of plaintiff, and all the factors involved in this cause of action, I conclude that the plaintiff has failed to establish any negligence on the part of either defendant which proximately caused his injuries; and further conclude that the contributory negligence on the part of the plaintiff was the proximate cause of the accident which produced the injuries of which he complains in his complaint. That motion of the defendant for a directed verdict is granted.

Counsel will submit decree.